UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | CASE NUMBER 22-CR-00021-01 |
| | * | |
| VERSUS | * | JUDGE S. MAURICE HICKS, Jr. |
| | * | |
| THOMAS DEW | * | MAGISTRATE JUDGE HORNSBY |

**REPORT AND RECOMMENDATION**

**Introduction**

Thomas Dew ("Dew") is charged with conspiracy to possess with intent to distribute methamphetamine, distribution of methamphetamine, and possession of firearms by a convicted felon. Before the court is Dew's **Motion to Suppress (Doc. 261)**. Dew alleges that the search warrant signed by a state court judge was not signed by that judge prior to the search of Dew's property. Dew also alleges that the good faith exception does not apply because law enforcement seized property beyond the scope of the warrant.

**Facts**

An evidentiary hearing was held on June 25, 2024. The following facts were found credible at the hearing. On December 20, 2020, Lionel Somersall, co-defendant of Dew, was arrested. Deputies caught him with three bags of methamphetamine totaling approximately two ounces. Somersall was driving Dew's Truck. Just three days later, Dew was arrested with a small amount of methamphetamine and ammunition. Agents then began to receive information that Dew was a major narcotics dealer in the region.

Deputies conducted seven separate controlled buys from Dew. Many of the buys were recorded on video. Over the course of the investigation, agents bought more than fourteen ounces of methamphetamine from Dew and Somersall. Dew explained on video to a CI that all illegal drugs possessed by Somersall came from Dew. Multiple buys originated from Dew's house.

On August 10, 2021, deputies caught co-defendant Gary Smith with 3.8 ounces of methamphetamine in his car. A search of his phone revealed that Smith obtained the methamphetamine from Dew.

On September 5, 2021, deputies caught Joe Lewing with four ounces of methamphetamine. Lewing admitted that he purchased the methamphetamine from Dew. A subsequent search of his phone proved this to be true.

On September 2, 2021, a postal worker observed U.S. currency and suspected methamphetamine in Dew's mailbox. The postal worker immediately reported this to deputies.

On September 13, 2021, Somersall and Sharron Nicole Taylor were driving Dew's truck. They were stopped for a traffic violation and arrested for possessing a firearm as a felon. While at the jail, Taylor called Dew and told him that she and Somersall tossed a bank bag with methamphetamine from the truck. She told Dew where to get it. Deputies then located the bag and three ounces of methamphetamine. In a subsequent interview, Somersall claimed the gun but explained the methamphetamine belonged to Dew.

Three days prior to the execution of the search warrant, a Confidential Informant explained that Dew was getting methamphetamine from a source in Natchitoches. The

supply would be "re-upped" on September 17, 2021. Deputies surveilled Dew's home and observed Julius Washington, a known drug-dealer from Natchitoches, arrive at Dew's home.

Deputy Don Flores applied for a search warrant on September 17, 2021. Judge Beasley faxed the signed search warrant to deputies at 7:13 pm. Dispatch logs indicate that deputies began to enter Dew's property at 7:36 pm. The warrant authorized the deputies to search for "all suspected crystal substance, all green vegetable substance, any firearms, currency, safes/vaults, video surveillance recording systems, and ledgers, within the residence, and all curtilage, including vehicles."

As detectives approached Dew's property, they observed co-defendant Christy McPherson in the driver's seat of her car. Dew occupied the passenger seat. Deputies observed a bag of methamphetamine on the ground just under the passenger door. They also noted that McPherson's car smelled of marijuana. Deputies removed both occupants and searched McPherson's vehicle. Inside the car, deputies located a drone, a second bag of methamphetamine, $1,265.00, and a cell phone.

The detectives then searched Dew's house. In Dew's bedroom they located shotgun shells, a digital scale, methamphetamine distribution paraphernalia, five cell phones, a DVR home surveillance system, and a ballistic vest. In the rest of the house, deputies located and seized three computers and ten cell phones. In a shed outside, deputies seized two chainsaws.

**Law and Analysis**

Dew argues that numerous items seized on the day of the execution of the search warrant were outside of the scope of the search warrant. Dew cites Horton v. California, 496 U.S. 128, 141–42 (1990), which explains that if items are taken outside of the scope of the warrant, more is required. Absent something more, the subsequent seizure should be suppressed.

A search warrant should describe the property to be seized with reasonable specificity, but not with elaborate detail. United States v. Hill, 19 F.3d 984, 987 (5th Cir. 1994). The plain view exception applies when an officer lawfully in a location by virtue of a warrant or some exception to the warrant requirement seizes an item having an incriminating character that is "immediately apparent." Id. at 988.

However, when officers execute a warrant in a manner that offends the Fourth Amendment, there is no objectively reasonable good-faith reliance. "Evidence which falls outside the scope of the warrant normally must be suppressed." United States v. Loe, 248 F.3d 449, 460 (5th Cir. 2001). However, two exceptions apply. First, items of an "incriminatory character" which are found in the course of a legal search, but were not described in the search warrant, may be seized. Second, officers may seize property which is not described in the warrant if the property exhibits a "sufficient nexus" to the crime under investigation. Id. at 460-61.

Here, law enforcement agents had a validly signed warrant before they entered the property to execute the warrant. Numerous items were seized that were not specifically enumerated in the warrant. In Dew's brief, he references (1) a cell phone in Dew's pocket,

(2) a surveillance drone, (3) a ballistic vest, (4) clear plastic bags and a scale, (5) multiple cell phones, (6), a watch, (7) shotgun shells, (8) digital scales, (9) computers, (10) cell phones, and (11) chain saws. With the exception of the chainsaws, these were not random seizures. It was readily apparent that the items were evidence of illegal criminal activity. They were all found within the plain-view doctrine.

### Cell Phones and Watch

When asked if it was common for drug dealers to have multiple cell phones, Detective Flores answered, "definitely yes." Tr. 24. Agents knew that Dew was communicating with buyers and co-conspirators via a cell phone. It was readily apparent to officers on scene that Dew was using cell phones to ply his trade. The existence of multiple cell phones only strengthened the evidence of their use in criminal activity.

Agents also seized a watch. Flores testified that the watch may have been a smart watch. Tr. 17. If the watch was a smart watch, it likely had the functions of a cell phone, so the same concerns apply.

### Drone and Computers

Detectives also seized a surveillance drone and computers. Detective Flores explained that these items fell into the surveillance system category of the warrant. He explained that the purpose of the drone was to surveil the area. Tr. 15-16. Further, he explained that it is common in his training and experience for a surveillance system to be operated by a laptop computer. Tr. 24. Flores was acting in good faith when he seized the computers and the drone. Their possible criminal use in Dew's drug dealing operation was readily apparent.

### Ammunition and Ballistic Vest

Dew is a convicted felon, and the agents knew this. Tr. 23. He is prohibited from possessing any ammunition by federal law. The shotgun shells were found within the plain view doctrine. Similarly, it is a state crime for a felon to possess body armor. La. R.S. § 14:95.3. It was readily apparent to any agent on scene that the ballistic vest was evidence of a crime and, therefore, its seizure was permitted.

### Digital Scale and Plastic Bags

Digital scales and plastic bags are common tools in drug distribution. Tr. 16. Drugs are typically weighed for distribution and packaged in clear plastic bags for distribution. While not specifically mentioned in the warrant, these items are evidence of drug trafficking. Their use and incriminatory nature are immediately apparent to any trained police officer.

### Chain Saws

The detectives seized several chainsaws from one of the buildings on Dew's property. These chainsaws matched the description of several stolen chainsaws in the area that detectives had been looking for. Flores explained that it is common for drug users to trade stolen property for drugs. Tr. 21. He testified that officers had observed Dew for quite some time and that he had never been seen doing any work involving a chainsaw. These representations are not enough to justify seizure of the saws.

The chainsaws are obviously outside the scope of the warrant, and their criminality was not readily apparent as to Dew. Furthermore, the nexus between the chainsaws and the crimes under investigation is too tenuous. There is no evidence to support more than a

hunch that the chainsaws or other property on the premises might be stolen. Therefore, any evidence regarding the chainsaws should be suppressed.

### Timing of the Search

There is no evidence that the search began before the detectives received the warrant. The credible evidence proves otherwise. The officers received the signed search warrant prior to beginning their search.

### Conclusion

Except as to the chainsaws, Dew's motion lacks merit. Accordingly, it is recommended that the **Motion to Suppress (Doc. 261)** be granted as to the chainsaws but denied as to all other items seized.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Crim. P. 59(b)(2), parties aggrieved by this recommendation have fourteen (14) days from the date of this Report and Recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Crim. P. 45(b). A party may respond to another party's objections within fourteen (14) days from the filing of the objections. Counsel are directed to furnish a paper copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file timely written objections to the proposed findings, conclusions and recommendation set forth above shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and

legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

   THUS DONE AND SIGNED at Shreveport, Louisiana, this 29th day of October, 2024.

                               Mark L. Hornsby
                               U.S. Magistrate Judge